# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CYNTHIA SAUER, *et al.*,    )
    )
    Plaintiffs,    )
    )    No. 10 C 3258
    v.    )
    )    Magistrate Judge Nan R. Nolan
EXELON GENERATION CO., LLC,    )
*et al.*,    )
    )
    Defendants.    )

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiffs' two Motions to Compel additional document production from Defendant Exelon; Defendant UniTech's motion to compel additional interrogatory responses, initial disclosures and document production from Plaintiffs; and a temporal scope of discovery dispute concerning whether Defendants should be required to produce documents going as far back as 1990. For the reasons stated below, Plaintiffs' motions are granted in part and denied in part, and UniTech's motion is granted.

## I. BACKGROUND

Plaintiffs Cynthia Sauer and Joseph Sauer, individually and as parents and natural guardians of Sarah Sauer, a minor, initiated this lawsuit against Exelon Corporation, Exelon Generation Company, LLC, and UniTech Services Group, Inc. alleging that radioactive discharges from Defendants' facilities caused Sarah Sauer

to develop brain cancer.[1] (Amended Compl. ¶¶ 6, 9, 11. 17, 21–22, 24–29.) Sarah Sauer was diagnosed with a medulloblastoma in April 2001, approximately three years after her family moved to Grundy County, where Exelon's Dresden Generating Station and UniTech's facility are located. (*Id.* ¶¶ 4–6, 17, 21, 23.) UniTech has contracts with Exelon to launder contaminated materials at its Morris, Illinois, facility. (*Id.* ¶¶ 23, 27.) Plaintiffs claim that radioactive releases from the Dresden nuclear power plant and discharges from UniTech's laundry facility traveled through the groundwater and exposed Sarah to radiation sufficient to cause her brain tumor. (*See id.* ¶¶ 9, 11, 24–29, 34–35, 47.) Specifically, Plaintiffs plead causes of action for: (1) violation of the Price-Anderson Act; (2) negligence; (3) negligence per se; (4) strict liability; (5) private nuisance; (6) public nuisance; (7) willful and wonton infliction of emotional distress; (8) negligent infliction of emotional distress; and (9) fraud/concert of action/conspiracy. (*Id.* ¶¶ 59–113.)

This case was initiated by the filing of a Writ of Summons in the Court of Common Pleas in Philadelphia County, Pennsylvania, on August 26, 2009. (Am. Compl. ¶ 10.) On May 27, 2010, the case was removed to the Northern District of Illinois. The parties began serving discovery requests in October 2010, and on February 28, 2011, the case was referred to this Court for discovery supervision and the resolution of all discovery disputes.

---

[1] Claims against Exelon Corporation were dismissed with prejudice on July 7, 2011, pursuant to a joint stipulation of the parties.

# II. DISCUSSION

## A. Scope of Discovery

The parties disagree on the appropriate temporal limits for discovery. Defendants contend that discovery should be a limited to a 1996–2004 time period. They argue that this period is sufficient because it encompasses: (1) more than two and one-half years before Plaintiffs moved to Grundy County; (2) three years after Sarah Sauer's diagnosis; and (3) the entire time Plaintiffs lived in Grundy County.

Plaintiffs have proposed a 1990–2004 timeframe. They contend that this time period is appropriate because: (1) the Amended Complaint alleges that Sarah Sauer was impacted by releases at the Dresden facility dating back to at least 1994; (2) their expert has attested that radioactive materials persist for long periods of time in groundwater following a release and he needs historical data going back to the early 1990s to determine the impact Dresden's impact had on Sarah Sauer; (3) documents produced so far refer to earlier releases being relevant to assessing the Dresden's impact on the residential communities surrounding the facility; (4) earlier releases go to the question of knowledge on the part of Exelon and whether it acted appropriately once contaminated groundwater was discovered; and (5) earlier releases go to the question of credibility and whether Exelon has always been truthful in its disclosures about environmental releases.

Exelon argues that Plaintiffs' expert's conclusions are speculative. It contends the expert's opinion that he needs historical data is "not based on any evidence of actual exposures to Sarah Sauer" and "fails to identify any basis for concluding that

groundwater at Dresden could have migrated miles away to the locations where Ms. Sauer allegedly was exposed." Exelon's objections are premature. Fact discovery is ongoing and does not conclude until January 2012; expert discovery concludes in June 2012. Exelon's arguments are better suited to summary judgment or at trial. At this point in the proceedings, the expert's observations ably assist the Court in determining the temporal scope of discovery.

After carefully considering the issue, the Court concludes that the proper scope of discovery in this matter should include the 1990–2004 timeframe. *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1052 (7th Cir. 1998) ("District judges enjoy broad discretion . . . in delimiting the scope of discovery in a given case."); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (observing that district court has discretion to determine appropriate time period for discovery); *Haynes v. Dart*, 2010 WL 140387, at *3 (N.D. Ill. Jan. 11, 2010) ("A district court has discretion to determine the scope of discovery and to resolve discovery disputes."). Given Plaintiffs' expert's statement that contamination from the Dresden facility can persist for long periods of time, it is reasonably likely that releases dating back to the early 1990s could be relevant to Plaintiffs' claims or could lead to the discovery of admissible evidence. *See Manual for Complex Litigation, Fourth* § 34.28, at 674 (observing that in CERCLA cases, "relevant evidence may be decades old"). Further, the drafters of the Price-Anderson Amendments Act of 1998 contemplated that, on occasion, discovery going back 20 years or more would be necessary. *See* Trisha T. Pritkin, *Hanford: Where Traditional Common Law*

*Fails*, 30 Gonz. L. Rev. 523, 543–44 (1994–1995) ("Prior to the Price-Anderson Amendments Act of 1988, the three-year post-discovery statute of limitations period of the Price-Anderson discovery rule contained a maximum limitations period of 20 years from the date of defendant's tortious conduct. The 1988 Act eliminated the maximum limitations period altogether. This change justifiably allows for passage of extended latency periods following radiation exposure. The change also helps to address situations such as that at [the] Hanford [nuclear facility], where plaintiffs did not learn of a potentially compensable cause of action until public disclosures of radiation emissions were made decades after individuals were exposed.") (citation omitted); *cf. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) (observing that a limitations period is often an appropriate guideline for the temporal limits of discovery).

## B. Plaintiffs' First Motion to Compel

In their Motion to Compel Responses to Request for Production of Documents Nos. 9, 10 and 11, Plaintiffs seek an order compelling Exelon to produce all documents related to three other lawsuits: *Duffin v. Exelon Corp.*, No. 06 C 1382 (N.D. Ill. filed Mar. 13, 2006); *Reeves v. Commonwealth Edison Co.*, No. 06 C 5540 (N.D. Ill. filed Oct. 11, 2006); and *Illinois v. Exelon Corp.*, No. 06 MR 248 (Will County, Ill. Chancery Div. filed 2006). (*See* Mot. 1, 5; Reply 1.) All three cases concerned radioactive releases from Exelon's Braidwood Nuclear Power Plant, but Plaintiffs contend that each case also dealt, at least peripherally, with Exelon's Dresden Generating Station. (Mot. 1–3.) Plaintiffs argue that these documents are relevant because

the other lawsuits "involve similar claims and can be used to establish a pattern or a habit or routine practice." (*Id.* 4.)

Exelon contends that the three cases relate "solely to Braidwood Generating Station." (Resp. 1.) It argues that "documents and depositions from the Braidwood lawsuits are [neither] relevant [n]or could lead to the discovery of evidence concerning Sarah Sauer's alleged exposure to radiation from Dresden." (*Id.* 1–2.) "Documents relating to the operation of Braidwood have no bearing on whether Exelon complied with [its] duty of care in its operation of Dresden." (*Id.* 2.)

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Nevertheless, "requested discovery must be tied to the particular claims at issue in the case." *Sykes v. Target Stores*, 2002 WL 554505, at *3 (N.D. Ill. Apr. 15, 2002); *see Moore v. Morgan Stanley & Co., Inc.*, 2008 WL 4681942, at *2 (N.D. Ill. May 30, 2008). Under Rule 37, a party may move to compel discovery where another party fails to respond to a discovery request or where the response is evasive or incomplete. Fed. R. Civ. P. 37(a)(3)–(4). "In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (citation omitted); *see Cannon v. Burge*, 2010 WL 3714991, at *1 (N.D. Ill. Sept. 14, 2010) ("The federal discovery rules are liberal in order to assist in trial preparation and settlement."); *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). "Courts commonly look unfavorably upon significant restrictions placed upon the

discovery process" and the "burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450; *accord Cannon*, 2010 WL 3714991, at *1. As with all discovery matters, the Court has broad discretion whether to compel discovery. *See Kodish*, 235 F.R.D. at 450.

Here, Plaintiffs are entitled to the documents from the other lawsuits to the extent they are relevant to their claims in this case. Clearly, documents produced in prior nuclear contamination cases that refer to the Dresden facility during the relevant time period are "reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1). Thus, documents exchanged in the *Reeves*, *Duffin*, and *Illinois v. Exelon* cases that relate to contamination at Dresden, assess groundwater movement around Dresden, or that refer to activities at Dresden during the relevant time period are sufficiently related to the claims at issue in this case to warrant production. And Exelon, even while arguing that Plaintiffs' Motion to Compel should be denied in its entirety (Resp. 2), seems to acknowledge that the production in the other lawsuits contain Dresden-related documents, (*see id.* 10) (explaining that to the extent the prior discovery documents relate to contamination near Dresden, Exelon has already agreed to produce those "categories of documents").

The document requests at issue seek documents produced or received by Exelon in the three cases "relating and/or regarding air, soil, surface water, and groundwater contamination near [the Dresden] facility." (Mot. Ex. A at 1, 5–6.) Plaintiffs define "near" as within four miles of the Dresden facility. (*Id.* Ex. A at 4.) Exelon ar-

gues that "no foundation or basis has been articulated for such an arbitrary distance" and objects to this definition as unreasonably broad, vague, burdensome, and oppressive. (*Id.* Ex. E at 6, 9–11.) The Court agrees. It would be nearly impossible to review all the documents produced or received in the three cases to determine if they relate to contamination *within four miles* of the Dresden facility. Accordingly, the Court restricts each of the document requests at issue to documents produced or received that "refer or relate to air, soil, surface water, or groundwater contamination from the Dresden facility."

Despite the language of the requests that form the basis of their Motion to Compel, Plaintiffs argue that they are entitled to documents related to contamination near the Braidwood facility along with the relevant Dresden-focused documents. (*See* Mot. 5–6; Reply 2, 4.) The Court disagrees. Not only do the production requests explicitly limit themselves to documents concerning contamination near the Dresden facility, but even at a more fundamental level, Braidwood-related documents are simply irrelevant to Plaintiffs' claims.

Plaintiffs have bought a Price-Anderson Act public liability claim based on the occurrence of alleged nuclear incidents that took place *at the Dresden facility*. (Am. Compl. ¶¶ 59–69.) Additionally, Plaintiffs have alleged a number of state law claims, including negligence, strict liability and fraud, related to Exelon's activities *at Dresden*. (*Id.* ¶¶ 70–113.) There is not a single mention of the Braidwood facility in the Amended Complaint. That absence is especially noteworthy considering the standard of care required of Exelon under the Price-Anderson Act. Because "states

are preempted from imposing a non-federal duty in tort" and because any state statutory claims are preempted by the federal act, federal nuclear safety and dose regulations provide the sole measure of Exelon's duty in this case. *See Devine v. Commonwealth Edison Co.*, 2006 WL 2038593, at *3 (N.D. Ill. July 19, 2006) (citation omitted); *Reeves v. Commonwealth Edison Co.*, 2008 WL 239030, at *3 (N.D. Ill. Jan. 28, 2008); see also *O'Connor v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994) ("Federal regulations must provide the sole measure of the defendant' duty in a public liability cause of action.").

Plaintiffs have not provided any reason for needing information regarding Braidwood in order to prove that Exelon violated federal dose limits at the Dresden facility. The Braidwood facility may have had radioactive leaks around the same time as the alleged leaks at Dresden, but Plaintiffs have not provided a sufficient explanation for how information about spills at Braidwood is relevant to their Dresden claims. The two facilities are completely separate operational entities. Further, even disregarding the standard of care requirements of the Price-Anderson Act, Plaintiffs have not articulated how building a case against Exelon for negligence *at Dresden* or fraud based on activities *at Dresden*, as the Amended Complaint alleges, is in any way aided by information relating to the Braidwood facility.

Exelon argues that producing the prior litigation documents would be overly burdensome. (Resp. 3.) While a discovery request can be denied if the "burden or expense of the proposed discovery outweighs its likely benefit," a party objecting to discovery must *specifically* demonstrate how the request is burdensome. Fed. R.

Civ. P. 26(b)(2)(C)(iii); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011); *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, at *6 n.6 (N.D. Ill. Aug. 2, 2006). This specific showing can include "an estimate of the number of documents that it would be required to provide . . ., the number of hours of work by lawyers and paralegals required, [or] the expense." *Heraeus Kulzer*, 633 F. 3d at 598. Here, Exelon has not provided any evidence in support of its burdensome argument. It merely states, without support, that its burden and expense would be "considerable" and that its lawyers would have to review "thousands" of documents. (Resp. 3.) Such a burdensome argument is insufficient to outweigh Plaintiffs' right to potentially relevant documents. *See Heraeus Kulzer*, 633 F. 3d at 598 (denying a burdensome challenge to discovery because, while estimates of burden would have sufficed, none were even offered).

In any event, Exelon has agreed to produce the "categories of documents" in the prior litigation discovery that it believes are relevant to Plaintiffs' claims. (Resp. 10.) To the extent that Exelon is prepared to certify that it has already given Plaintiffs all discovery documents from the prior lawsuits that refer or relate to the Dresden facility, the Court will accept such a certification to fulfill Exelon's obligation. Alternatively, Exelon may choose whether it wishes to single out and produce only the Dresden-related documents, or whether it would prefer to simply produce all discovery documents from the three cases.

In sum, Defendants shall produce all documents produced or received in the *Reeves*, *Duffin*, and *Illinois v. Exelon* cases that refer or relate to air, soil, surface

water, or groundwater contamination from the Dresden facility, or provide a certification that all such documents have already been provided to Plaintiffs.

## C. Plaintiffs' Second Motion to Compel

In Plaintiffs' Motion to Compel Responses to Request for Production of Documents Directed to Defendant Exelon Generation Co., LLC, they seek an order compelling Exelon to: (1) respond to, and correct the deficiencies referenced in, Plaintiffs' April 6, 2011, letter to Exelon regarding production issues; (2) produce additional documents relating to a June 2004 earthquake that struck near the Dresden facility; (3) produce additional documents regarding Dresden's underground piping system; (4) produce additional documents regarding Dresden's cooling lake; and (5) produce a privilege log. (Mot. 5–9.) Plaintiffs' requests are addressed seriatim.

### 1. Plaintiffs' Letter of April 6, 2011

Plaintiffs complain that Exelon has not responded to their April 6, 2011, letter. (Mot. 5.) In this letter, Plaintiffs described potential deficiencies in Exelon's production and attached a 30-page spreadsheet detailing potential issues with specific documents. (*Id*.) However, it is not clear what Plaintiffs wish the Court to do about Exelon's failure to respond to their letter. The Motion merely describes the letter, references the large spreadsheet attached to the letter, and then states that Exelon has not addressed all the issues raised in the letter and the spreadsheet. (*Id*.) Nevertheless, assuming that Plaintiffs are asking the Court to compel Exelon to address the alleged deficiencies described in the spreadsheet, the Court declines to do so. The Court will not parse through Plaintiffs' small-print, 30-plus page spreadsheet

attached to their Motion to Compel to determine which, if any, of the hundreds of asserted deficiencies are actually deficient. It is the Plaintiffs' responsibility to identify specific documents, or specific categories of documents, to which they believe they are entitled. If the Plaintiffs wanted the Court to address the concerns contained in their spreadsheet, they should have addressed them in the body of their motion. This portion of Plaintiffs' Motion to Compel is denied.

## 2. Documents Regarding the June 2004 Earthquake, the Underground Piping System and the Cooling Lake

Next, Plaintiffs ask the Court to compel Exelon's compliance with production requests relating to the June 2004 earthquake that struck near the Dresden facility, the underground piping system at Dresden, and the facility's cooling lake. (Mot. Ex. A at 8, 10–14.) While the requests are arguably overbroad, they do have the potential to produce relevant information. If, as Plaintiffs claim, the earthquake lead to the discovery of *previous* groundwater contamination at the Dresden facility, then these types of documents would be relevant to Plaintiffs' claims. (*See id.* 5–6.) Similarly, information about the construction, location, inspection and repair of Dresden's underground piping and cooling lake systems could provide relevant information regarding the movement of groundwater around the facility as well as the locations of potential leaks. (*See id.* 7–8.)

In its Response, Exelon asserts that it has already produced documents related to all three topics. (Resp. 3–4, 6, 9–10.) Exelon provides Bates Numbers for specific documents already produced as well as detailed descriptions of other categories of

documents related to each of these three topics. (*Id*.) Further, Exelon explains in detail why it believes its discovery obligation on each topic has been satisfied. (*Id*. 4–5, 6–8, 10–11.)

Pursuant to the Court's June 7, 2011, Minute Order, Plaintiffs were ordered to submit a Reply brief no later than July 15, 2011. Nevertheless, Plaintiffs elected not to file a Reply. The Court finds this omission troubling. Plaintiffs' Motion to Compel does not even make reference to the fact that Exelon had already provided Plaintiffs with documents related to the three topics they now seek to compel. Further, it appears from Exelon's Response that a significant amount of material has already been produced. Without any explanation from Plaintiffs for why the information they have received is insufficient to satisfy their needs, the Court has no way to properly assess whether Exelon has sufficiently fulfilled its obligations. If Plaintiffs disagreed with Exelon's Response, they should have filed a Reply. Under the circumstances, the Court has no choice but to accept Exelon's assertions that it has provided sufficient information responsive to Plaintiffs' requests. The Court therefore denies Plaintiffs' request to compel additional production of documents relating to the June 2004 earthquake, Dresden's underground piping system, and the facility's cooling lake.

### 3. *Privilege Log*

Finally, Plaintiffs ask the Court to order Exelon to produce a privilege log. Privilege logs are an essential part of the litigation process that allow the court and the requesting party to determine the nature of each document being withheld and to

assess the claim of privilege. *See* Fed. R. Civ. P. 26(b)(5); *Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006). A timely privilege log is required by the federal rules, and the failure to provide such a log "may result in a waiver of any protection from discovery." *Babych v. Psychiatric Solutions, Inc.,* 271 F.R.D. 603, 608 (N.D. Ill. 2010); *see also Naik v. Boehringer-Ingelheim Pharmaceuticals, Inc.*, 2008 WL 4866015, at *3 (N.D. Ill. Jun. 19, 2008).

Here, over eight months have elapsed since Plaintiffs first served discovery requests on Exelon, and it has been six months since Exelon first began producing documents. It is past time for Exelon to provide Plaintiffs with a log of their privileged documents. *See, e.g., Miller v. Plymouth*, 2011 WL 1740154, at *2, 4 (N.D. Ind. May 5, 2011) (finding a privilege log to be untimely where defendants produced a log six months after discovery requests were served on them). This conclusion is buttressed by Exelon's own words at the June 1, 2011, status hearing where Exelon's attorney stated on the record that he expected the privilege log to be "served within a couple of weeks." It has been over two months since that hearing and yet no log has been produced. Therefore, Exelon is ordered to provide Plaintiffs with a privilege log no later than September 2, 2011. Going forward, Exelon shall timely amend its log as necessary.

### D. UniTech's Motion to Compel

In its Motion to Compel, UniTech seeks an order compelling Plaintiffs to: (1) provide the specific facts underlying their claims against UniTech, as requested by Interrogatories Nos. 2, 3, and 4 of UniTech's First Set of Interrogatories; (2) amend

their initial disclosures to fully disclose, or certify that they have fully disclosed, the names of all individuals likely to have discoverable information supporting their claims, the subject matter(s) in those individuals' knowledge, and a computation of each category of Plaintiffs' damages, as required by Fed. R. Civ. P. 26(a); and (3) produce all documents relating to their claims against UniTech, as requested in UniTech's First Set of Document Requests, or certify that they do not have any documents in their custody, possession, or control relating to these claims. The Court addresses UniTech's requests seriatim.

### 1. Interrogatories

Interrogatories 2, 3, and 4 request that Plaintiffs provide information regarding the "releases" that they allege occurred at UniTech's Morris facility and caused Sarah Sauer's injuries. (Mot. 3–4 & Ex. A.) Plaintiffs refuse to answer, asserting that the Interrogatories are "unduly vague, overly broad, and ambiguous and requests information better answered by the requesting party" and that they call "for an expert report before the deadline for expert reports." (*Id.* Ex. B.) Plaintiffs further contend that the Interrogatories require them to "provide a narrative account of its case," including "every single fact that will ultimately support an expert's opinion on releases, pathways and dose." (Resp. 2, 4.) The Court disagrees.

In their Amended Complaint, Plaintiffs allege that Defendants "caused recurrent releases of radioactive and toxic materials into the environment, in complete disregard for applicable law, . . . in various ways, including the discharge of radioactive and toxic materials into public water bodies, the emission of radioactive and

toxic materials from facility stacks, the exposure of workers, who could then spread contamination outside the worksite, and improper disposal of materials which eventually leaked from storage tanks and other disposal systems." (Am. Compl. ¶ 61.) Interrogatories 2, 3, and 4 merely request that Plaintiffs' provide the factual underpinnings for their allegations that UniTech's "releases," as described in paragraphs 61, 62 and 67 of the Amended Complaint, caused Sarah Sauer's injuries. (*See* Reply 5 ("UniTech is only seeking the specific facts Plaintiffs currently have in their possession relating to the releases they alleged occurred at UniTech's facility, how they allegedly reached Ms. Sarah Sauer, and how they allegedly caused her cancer.").) Given that Plaintiffs' attorneys have certified that the complaint's allegations have evidentiary support and are not being presented to harass or needlessly increase the cost of litigation, *see* Fed. R. Civ. P. 11(b), the interrogatories are not vague, overbroad or premature, *see Sargent-Welch Scientific Co. v. Ventron Corp.*, 59 F.R.D. 500, 503 (N.D. Ill. 1973) ("It is clear that the defendants are entitled to know the facts upon which plaintiff's claim is founded. Mutual knowledge of the relevant facts is essential to proper litigation. Either party may compel the other to disclose what relevant facts he has in his possession."); *Directory Dividends, Inc. v. SBC Comm'ns, Inc.*, 2003 WL 23208804, at *3 (E.D. Pa. Dec. 31, 2003) ("SBC is trying to uncover the factual basis for Plaintiff's damages claim, which is the purpose of discovery. . . . It is now settled that interrogatories are an appropriate means for obtaining a specification of the facts upon which a claim of negligence is founded.") (citation omitted); *Sanimax AGS, Inc. v. Gulf Hydrocarbon, Inc.*, 2010 WL 2560032, at

*3 (S.D. Ind. June 23, 2010) (overruling objection that discovery request called for expert testimony and ordering plaintiff to produce information relating to contamination at plant).

Plaintiffs shall provide complete responses, without objections, to Interrogatories 2, 3, and 4.

## 2. *Initial Disclosures*

Under Rule 26, Plaintiffs have an obligation to provide Defendants with the names of witnesses likely to have discoverable information that Plaintiffs may use to support their claims, along with the subjects of the witnesses' information. Fed. R. Civ. P. 26(a)(1)(A)(i). Plaintiffs also have a continuing obligation to supplement their initial disclosures. Fed. R. Civ. P. 26(e)(1)(A).

Here, Plaintiffs have listed only four individuals, or categories of individuals, likely to have discoverable information: (a) Plaintiffs themselves; (b) Eileen Wagner, Sarah Sauer's aunt; (c) "all individuals identified by Defendants;" and (d) "doctors and medical professionals as identified in the records." (Mot. Ex. D.) Nevertheless, Plaintiffs contend "there are documents in the public realm relevant to Unitech that are available to all parties and that may be used to support Plaintiff's proofs in this litigation." (*Id.* Ex. C.) However, Plaintiffs have not provided the names of the sources of these documents. Further, Plaintiffs have not provided the subject matter of the witnesses' knowledge.

Plaintiffs' witness disclosure is clearly deficient. Plaintiffs shall supplement their initial disclosures and provide Defendants with the *specific names* of *all* per-

sons presently known to Plaintiffs who are likely to have discoverable information that Plaintiffs may use to support their claims against Defendants, along with the subject matter of the witnesses' knowledge.

Rule 26 also requires parties to provide a *computation* of each category of damages claimed, along with the documents or other evidentiary material on which each computation is based. Fed. R. Civ. P. 26(a)(1)(A)(iii). Here, Plaintiffs have stated only that "Plaintiffs damages are ongoing and continue to be calculated. For further information on Plaintiffs' damages, see Plaintiffs' Amended Complaint." (Mot. Ex. D.) Plaintiffs further assert that they will produce, sometime in the future, "an expert report detailing past and future medical expenses and future loss of earnings for Sarah Sauer." (*Id.* Ex. C.)

Plaintiffs' damages disclosure is insufficient. "[T]he modern attitude toward discovery . . . regards secrecy as uncongenial to truth-seeking and trial by ambush as destructive of the overarching goal that cases be justly determined on their merits." *Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.*, 2008 WL 1883435, at *4 (N.D. Ill. April 28, 2008); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). "[B]y its very terms Rule 26(a) requires more than providing—without any explanation— undifferentiated financial statements; it requires a 'computation,' supported by documents." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006). "A party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such materials had been made under Rule 34."

1993 Advisory Committee Notes to Fed. R. Civ. P. 26(a)(1). Thus, Plaintiffs must provide Defendants with a current *computation* of each category of damages sought, along with the documents or other evidentiary material on which such computation is based.

Plaintiffs contend that there is an exception to the damages disclosure for personal injury cases. (Resp. 5–6.) The Court is not persuaded. In fact, applicable precedent clearly requires that personal injury plaintiffs provide a specific computation of their damages and make available documents and other evidentiary material on which the computation is based. For example, in *Clayman v. Starwood Hotels & Resorts Worldwide*, 343 F. Supp. 2d 1037 (D. Kan. 2004), the plaintiff argued that the defendant was not prejudiced by the plaintiff's failure to provide a computation of his damages because "defendant had the opportunity to discover information about plaintiff's damages through the deposition of [the plaintiff's treating neurologist], and therefore such non-compliance is harmless." *Id.* at 1047. The court was not persuaded, ruling that "defendant is entitled to a specific computation of plaintiff's damages, and is entitled to have made available for inspection and copying the documents and other evidentiary material on which such computation is based." *Id.* The court also admonished the plaintiff that a failure to comply will result in him not being "permitted to present any damages calculations regarding future medical expenses at trial." *Id.*

Similarly, in *City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221–22 (N.D. Cal. 2003), which Plaintiffs cite in support of their argument that

Rule 26(a)(1)(A)(iii) does not apply to personal injury cases (Resp. 5), the court *granted* the defendants' motion to compel the plaintiffs to provide greater detail of their damages. The court found that "in a personal injury case, the nature and extent of any injuries suffered must be disclosed, including amounts claimed for 'general' damages (pain, suffering or disfigurement) as well as 'special' damages (medical bills, lost wages, cost of repairing damaged property, etc.)." 218 F.R.D. at 221 (citation omitted). Thus, the plaintiffs were ordered to supplement their initial disclosures to "provide more than a lump sum statement of the damages allegedly sustained." *Id.*

### 3. Document Requests

In its request for documents, UniTech requests that Plaintiffs produce all documents upon which they base their claims against UniTech. (Mot. 9–10 & Ex. E.) Plaintiffs assert that they "have produced all relevant documents in their possession." (Resp. 6.) UniTech contends that Plaintiffs have identified only three documents related to their allegations against UniTech. (Reply 9.) UniTech queries "how Plaintiffs can claim that their document production represents the sum total of the documents in their possession that form the basis for their claims against UniTech." (*Id.*)

Plaintiffs shall supplement their document production with any other nonprivileged documents in their possession, custody or control that relate to their claims against UniTech or UniTech's Morris facility, or certify that they have produced all responsive, nonprivileged documents.

### III. CONCLUSION

Plaintiffs' Motion to Compel Responses to Request for Production of Documents Nos. 9, 10 and 11 [59] and Motion to Compel Responses to Request for Production of Documents Directed to Defendant Exelon Generation Co., LLC [70] are **GRANTED IN PART AND DENIED IN PART**. On or before **September 2, 2011**, Defendants shall produce all documents produced or received in the *Reeves*, *Duffin*, and *Illinois v. Exelon* cases that refer or relate to air, soil, surface water, or groundwater contamination from the Dresden facility, or provide a certification that all such documents have already been provided to Plaintiffs. Exelon shall provide Plaintiffs with a privilege log no later than **September 2, 2011**.

Defendant UniTech's Motion to Compel [60] is **GRANTED**. On or before **September 2, 2011**, Plaintiffs shall (i) provide the specific facts underlying their claims against UniTech, as requested by Interrogatories Nos. 2, 3, and 4 of UniTech's First Set of Interrogatories; (ii) amend their initial disclosures to fully disclose, or certify that they have fully disclosed, the names of all individuals likely to have discoverable information supporting their claims, the subject matter(s) in those individuals' knowledge, and a computation of each category of Plaintiffs' damages, as required by Fed. R. Civ. P. 26(a); and (iii) produce all documents relating to their claims against UniTech, as requested in UniTech's First Set of Document Requests, or certify that they do not have any documents in their custody, possession, or control relating to these claims.

E N T E R:

Dated: August 15, 2011

_Nan R. Nolan_
NAN R. NOLAN
United States Magistrate Judge