## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA SAUER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 10 C 3258 |
| v. | ) | |
| | ) | Magistrate Judge Nan R. Nolan |
| EXELON GENERATION CO., LLC, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiffs' Motion for Protective Order to Preclude the Deposition of Sarah Sauer. For the reasons stated below, Plaintiffs' Motion is denied.

## I. BACKGROUND

Plaintiffs Cynthia Sauer and Joseph Sauer, individually and as parents and natural guardians of Sarah Sauer, a minor, initiated this lawsuit against Exelon Corporation, Exelon Generation Company, LLC, and UniTech Services Group, Inc. alleging that radioactive discharges from Defendants' facilities caused Sarah Sauer to develop brain cancer.[1] (Am. Compl. ¶¶ 6, 9, 11. 17, 21–22, 24–29.) Sarah Sauer was diagnosed with a medulloblastoma in April 2001, approximately three years after her family moved to Grundy County, where Exelon's Dresden Generating

---

[1] Claims against Exelon Corporation were dismissed with prejudice on July 7, 2011, pursuant to a joint stipulation of the parties.

Station and UniTech's facility are located. (*Id.* ¶¶ 4–6, 17, 21, 23.) UniTech has contracts with Exelon to launder contaminated materials at its Morris, Illinois, facility. (*Id.* ¶¶ 23, 27.) Plaintiffs claim that radioactive releases from the Dresden nuclear power plant and discharges from UniTech's laundry traveled through the groundwater and exposed Sarah to radiation sufficient to cause her brain tumor. (*See id.* ¶¶ 9, 11, 24–29, 34–35, 47.) Specifically, Plaintiffs plead causes of action for: (1) violation of the federal Price-Anderson Act; (2) negligence; (3) negligence per se; (4) strict liability; (5) private nuisance; (6) public nuisance; (7) willful and wonton infliction of emotional distress; (8) negligent infliction of emotional distress; and (9) fraud/concert of action/conspiracy. (*Id.* ¶¶ 59–113.)

This case was initiated by the filing of a Writ of Summons in the Court of Common Pleas in Philadelphia County, Pennsylvania, on August 26, 2009. (Am. Compl. ¶ 10.) On May 27, 2010, the case was removed to the Northern District of Illinois. The parties began serving discovery requests in October 2010, and on February 28, 2011, the case was referred to this Court for discovery supervision and the resolution of all discovery disputes.

Sarah Sauer was examined by Lisa F. Clunie, M.D. on December 13, 2010, and March 22, 2011. (Mot. Ex. C.) On September 9, 2011, Dr. Clunie completed a Physician's Report, in which she opined that Sarah "is incapacitated with regard to psychomotor ability, cognitive ability, [and] reasoning." (*Id.*) Dr. Clunie also concluded that Sarah "has difficulty with retention and retrieval of information."

(*Id.*) Nevertheless, Dr. Clunie stated that Sarah can "appear in Court without injury to her health." (*Id.*)

On September 23, 2011, Cynthia and Joseph Sauer petitioned the Circuit Court of Harrison County, Indiana, to appoint them as permanent guardians for Sarah Sauer. (Mot. Ex. B.) On November 9, 2011, the Circuit Court granted the uncontested petition, finding that Sarah is an incapacitated person. (*Id.*) Specifically, the Circuit Court found that Sarah

> suffers from weakened visual and motor skills, has difficulties with retaining and retrieving information and has [severe] incapacities that prevent her from making personal and financial decisions, all following brain surgery and treatment for brain malignancy, she is unable to maintain and care for her person, financial affairs and supervision, and for the prudent management of her property.

(*Id.*) Accordingly, the Circuit Court appointed Cynthia and Joseph Sauer to be the permanent guardians over the person and estate of Sarah Sauer. (*Id.*)

## II. DISCUSSION

In their Motion for Protective Order, Plaintiffs seek to preclude Defendants from taking Sarah Sauer's deposition. (Mot. 2, 7, 8.) Plaintiffs contend that because Sarah has been adjudicated incapacitated, she "cannot give competent testimony regarding the facts and circumstances that gave rise to this action." (*Id.* 3.) Alternatively, Plaintiffs suggest that the Court allow for an independent medical examination of Sarah or for a deposition limited to her current well being. (*Id.* 7.)

Defendants argue that Plaintiffs have failed to establish "good cause" to prevent Sarah Sauer's deposition. (Resp. 4–8.) They contend that under the Federal Rules of Evidence, Sarah is a competent witness. (*Id.* 4.)

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "The federal discovery rules are liberal in order to assist in trial preparation and settlement." *Cannon v. Burge*, No. 05 C 2192, 2010 WL 3714991, at *1 (N.D. Ill. Sept. 14, 2010). Nevertheless, upon a showing of "good cause," courts have the authority to enter orders protecting "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). However, "Courts commonly look unfavorably upon significant restrictions placed upon the discovery process" and the "burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006); *accord Cannon*, 2010 WL 3714991, at *1. As with all discovery matters, the Court has broad discretion whether to compel discovery. *See Kodish*, 235 F.R.D. at 450.

Here, Plaintiffs have not met their burden to demonstrate good cause for precluding the deposition of Sarah Sauer. First, Plaintiffs do not dispute that as a party to this lawsuit, Sarah presumably has information relevant to the subject matter of her claims. Second, Plaintiffs do not allege any "annoyance, embarrassment, oppression, or undue burden or expense" under Rule 26(c)(1). Instead, Plaintiffs argue that the Court should preclude Sarah Sauer's deposition because she has "difficulty in remembering, communicating and understanding." (Mot. 7.) But this is not the standard for competency under the Federal Rules of Evidence.

Under the Federal Rules of Evidence, all persons are presumed competent to testify. Fed. R. Evid. 601 ("Every person is competent to be a witness unless these rules provide otherwise."); *see Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 570 (7th Cir. 2009) (Rule 601 "creates a broad presumption of competency"). "What must be remembered, and is often confused, is that 'competency' is a matter of status not ability. Thus, the only two groups of persons specifically rendered incompetent as witnesses by the Federal Rules of Evidence are judges (Rule 605) and jurors (Rule 606)." *United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir. 1989). In fact, the Rules require only that the witness has personal knowledge, Fed. R. Evid. 602, and understands the duty to testify truthfully, Fed. R. Evid. 603. Further, "[n]o mental or moral qualifications for testifying as a witness are specified. . . . A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility . . . ." Fed. R. Evid. 601 advisory committee's note.

While Rule 602 requires a witness to have personal knowledge, it

> does not authorize courts to require a level of mental or moral capacity sufficient to make a witness trustworthy. Rule 602 simply requires that witness testimony be based on direct sensory experience. There is no question that this rule assumes that a witness must have some capacity to perceive and understand the matters to which the witness testifies. For example, if a witness offers to testify that he saw an event, Rule 602 requires that the witness have some visual capacity. But there is no reason to read Rule 602 to require levels of perceptual and cognitive ability sufficient to warrant an inference of trustworthiness. It would be odd to contend that a child or retarded adult who was the victim of a shooting had no personal knowledge of the attack because of limited perceptions and understanding.

27 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6005, at 50–51 (2d ed. 2007) (footnotes omitted). Similarly, while Rule 603 requires the witness to affirm that she will testify truthfully, "courts should not read moral or mental capacity requirements into Rule 603. . . . The only mental capacity required on the face of Rule 603 is the capacity necessary to make the declaration called for by the rule." *Id.*, § 6042, at 306–07. In sum, the "competency of a witness to testify . . . is a limited threshold decision . . . as to whether a proffered witness is capable of testifying in any meaningful fashion whatsoever." *United States v. Banks*, 520 F.2d 627, 630 (7th Cir. 1975).

Plaintiffs do not allege that Sarah Sauer totally lacks sensory perception of her surroundings. Nor do they contend that Sarah is unable to attend a deposition. Sarah's doctor stated that she can appear in court without injury to her health (Mot. Ex. C), and she appeared in person at the Circuit Court's guardianship hearing (*id.* Ex. B). Further, Plaintiffs have stated that Sarah can appear for a deposition limited to her current well being. (*Id.* 7.) Thus, even Plaintiffs acknowledge that Sarah Sauer is capable of testifying in a "meaningful fashion." *See Banks*, 520 F.2d at 630.

Plaintiffs contend that Sarah Sauer has difficulties with retention and retrieval of information. (Mot. 4, 5, 7 & Ex. C.) Nevertheless, these difficulties do not require the preclusion of Sarah's deposition. Like other witnesses, if she lacks recollection of a particular subject matter, she can state so on the record.

Finally, Plaintiffs' request is premature. After the deposition proceeds, "the parties may then make whatever arguments they deem appropriate regarding the competency of [Sarah Sauer's] testimony in this matter." *Deno v. Blackman*, No. 10 C 8550, 2011 WL 5581074, at *1 (S.D.N.Y. Nov. 30, 2011). For example, this Opinion does not preclude Plaintiffs (or Defendants) from filing a motion *in limine* regarding the admission of any part of Sarah's deposition at trial. *Id.*; *see Ramirez*, 871 F.2d at 584 ("For example, the judge always has the authority under Rule 403 to balance the probative value of testimony against its prejudicial effect.").

Plaintiffs' attempt to distinguish *Deno* is unavailing. In *Deno*, the defendants argued that because the plaintiff had been adjudicated an incapacitated person by the New York state courts, he could not give competent testimony. 2011 WL 5581074, at *1. The federal court ordered the deposition to go forward, finding no evidence of "Deno's current ability to observe, to remember, to communicate, and to understand that the oath imposes upon him the duty to tell the truth such that he cannot be deposed in this matter at this time." *Id.* at *2. Plaintiffs contend that "[u]nlike *Deno*, the reports regarding Sarah are very recent and demonstrate that Sarah does have difficulty in remembering, communicating and understanding." (Mot. 7.) But, regardless of how *recent* Sarah's medical reports are, Plaintiffs have not carried their burden to demonstrate that Sarah is without *any* ability to observe, remember, communicate or to understand that the oath/affirmation imposes a duty to tell the truth.[2]

---

[2] Although this case is governed by the federal rules of evidence, applying Indiana law would not change the outcome. In *Yanoff v. Muncy*, 688 N.E.2d 1259 (Ind. 1997), the

### III. CONCLUSION

Plaintiffs' Motion for Protective Order to Preclude the Deposition of Sarah Sauer [Doc. 108] is **DENIED**. Sarah Sauer is ORDERED to appear forthwith for her deposition.

ENTER:

Dated: March 5, 2012

_Nan R. Nolan_
_____
NAN R. NOLAN
United States Magistrate Judge

---

plaintiff had been adjudged "incompetent to handle his financial and personal affairs." *Id.* at 1261. Nevertheless, the Indiana Supreme Court observed that "an adjudication of inability to manage [the witness's] affairs does not necessarily render the witness incompetent [to testify]." *Id.* at 1261 n.1.